UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROHIT REDDY, | CASE NO. C19-0219JLR |
| Petitioner, | ORDER DENYING 28 U.S.C. § 2255 PETITION |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I.     INTRODUCTION

Before the court is Petitioner Rohit Reddy's habeas corpus petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Pet. (Dkt. # 1).) Respondent United States of America ("the Government") filed an answer to the petition. (Answer (Dkt. # 5).) Mr. Reddy did not respond to the Government's answer. (*See* Dkt.; *see also* 3/4/19 Order (Dkt. # 4) at 2 (explaining that the Government "shall note the Answer for consideration on the fourth Friday after it is filed" and "Petitioner may file a responsive brief no later than the Monday immediately preceding the noting date.").) The court has

ORDER - 1

reviewed the petition, the parties' submissions concerning the petition, the relevant portions of the record, including the record of the underlying criminal case, and the applicable law. Being fully advised,[1] the court DENIES Mr. Reddy's petition.

## II. BACKGROUND

On July 1, 2016, Mr. Reddy, who is not a United States citizen, pleaded guilty to one count of Supplemental Nutrition Assistance Program ("SNAP") Benefit Fraud. *See United States v. Reddy*, No. CR16-0189JLR (W.D. Wash.), Dkt. # 7 ("Plea"). His crime involved knowingly violating 7 U.S.C. § 2024 and related regulations by acquiring or using more than $100 of SNAP benefits. *Id.* ¶ 3. At sentencing, the court determined that the loss amount associated with Mr. Reddy's crime was $95,001.00. (*See* Answer, Ex. 3 ("Sentencing Tr.") at 60:15-23, 63:13-16); *Reddy*, No. CR16-0189JLR, Dkt. # 28 ("Judgment") at 6. The court sentenced Mr. Reddy to 14 months of imprisonment and three years of supervised release. *See Reddy*, No. CR16-0189JLR, Judgment at 2-3.

Mr. Reddy now brings a habeas petition alleging ineffective assistance of counsel. (*See* Pet. at 4.) In particular, Mr. Reddy asserts that his counsel led him to believe that the court would find a loss amount under $10,000.00, which would make it "very unlikely that [he] would be deported." (*See* Statement (Dkt. # 1-2) at 4.) With a $95,001.00 loss amount, however, Mr. Reddy is subject to mandatory deportation. (*Id.* at 4.) Mr. Reddy claims that, had his attorney not misadvised him about the loss amount associated with his guilty plea and the likelihood of his deportation, Mr. Reddy "would

---

[1] Neither party requests oral argument and the court determines that oral argument would not be helpful to its disposition of this matter. *See* Local Rules W.D. Wash. LCR 7(d).

have gone to trial or requested a plea agreement with a binding stipulation as to loss under $10,000." (*Id.* at 5.)

### III. ANALYSIS

**A. Title 28 United States Code § 2255**

A prisoner in federal custody may collaterally challenge his sentence under 28 U.S.C. § 2255 on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. § 2255(a). A court must hold an evidentiary hearing on a § 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[N]o hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal quotation marks omitted).

Here, the court concludes that an evidentiary hearing is unnecessary. The record provides a sufficient basis on which to judge Mr. Reddy's ineffective assistance of counsel claim. Accordingly, the court exercises its discretion not to hold an evidentiary hearing. *See id.*

**B. Ineffective Assistance of Counsel**

"[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). To establish a Sixth Amendment violation for ineffectiveness of counsel, a

petitioner must establish that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced his defense. *Id*. at 687. Counsel's performance was deficient if counsel "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 375-76 (9th Cir. 1985). Because of the difficulties of evaluating attorney performance in hindsight, "[a] fair assessment of attorney performance requires that every effort be made . . . to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The *Strickland* two-prong analysis applies to ineffective assistance of counsel challenges concerning guilty pleas. *Washington v. Lampert*, 422 F.3d 864, 872-73 (9th Cir. 2005). In the context of a plea bargain, the prejudice requirement is met by showing that, but for counsel's alleged errors, the petitioner would have rejected the plea offer. *Id.*; *see also Weaver v. Palmateer*, 455 F.3d 958, 967 (9th Cir. 2006). Further, counsel's failure to "advise her client regarding the risk of deportation" stemming from a plea agreement is grounds for an ineffective assistance of counsel finding. *See Padilla v. Kentucky*, 559 U.S. 356, 367-68 (2010). Where removal is "presumptively mandatory," counsel's performance is deficient by giving "false assurance" that a conviction will not result in removal. *Id.* at 368-69. In other words, "when the deportation consequence is truly clear," counsel must "give correct advice." *Id.* at 369. However, in "situations in which the deportation consequences of a particular plea are unclear or uncertain . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

A court addressing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test if the petitioner's showing is insufficient as to one prong. *Weaver*, 455 F.3d at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Here, Mr. Reddy claims that his counsel "told [him] that [he] would not be deported because the loss amount associated with [his] guilty plea . . . was under $10,000." (Pet. at 4.) The record of Mr. Reddy's criminal case, however, demonstrates that he and his counsel understood the immigration consequences of his guilty plea and, more specifically, that the court would ultimately determine the loss amount associated with his SNAP Benefit Fraud.

For example, the plea agreement states:

> **6. Immigration Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his removal from the United States.

*See Reddy*, No. CR16-0189JLR, Plea ¶ 6. The plea agreement also made clear that, although the listed fraudulent transactions totaled only $1,890.04 in loss, "Defendant agrees that the transactions listed in paragraph 12(e), and any other fraudulent food stamp transactions that the Defendant aided and abetted, are relevant conduct for purposes of

sentencing." *Id.* ¶ 11. Likewise, before listing the specific transactions, the plea agreement stated: "The following are representative SNAP transactions that occurred at [Mr. Reddy's store] involving cards that ROHIT REDDY took from individuals in exchange for cash." *Id.* ¶ 12(e). Thus, through the plea agreement alone, Mr. Reddy was aware of possible immigration consequences of pleading guilty and that the court would consider loss amounts in addition to the specified transactions.

In addition, the court made Mr. Reddy aware at his plea hearing that, as a result of felony conviction, "[p]eople who are not citizens might face removal or deportation . . . from the country." (*See* Answer, Ex. 2 ("Plea Tr.") at 7:21-8:17.) Mr. Reddy affirmed that he understood those consequence. (*Id.*)

Moreover, prior to sentencing, Mr. Reddy and his attorney demonstrated an appreciation of the risks of deportation. (*See generally* Answer, Ex. 4 ("Sentencing Memo.").) For example, Mr. Reddy's sentencing memorandum discussed that, although the plea agreement specifies instances totaling only $1,890.04 in loss, "[i]t is acknowledged the plea agreement also provides as additional relevant conduct other instances where the defendant aided and abetted fraudulent food stamp activity." (Sentencing Memo. at 4.) Mr. Reddy's sentencing memorandum therefore focused on arguing for a loss amount below $10,000.00. (*See generally id.*) Further, Mr. Reddy expressly acknowledged the deportation consequences of a loss finding above $10,000.00:

> Mr. Reddy, as a noncitizen, would be subject to mandatory deportation if found guilty of an aggravated felony, which would include a theft offense where the dollar amount of loss was in excess of $10,000. It is for this reason,

> the defense is so concerned about a judicial finding establishing the loss amount in excess of the $10,000 threshold for immigration consequences.
>
> The Court is asked to consider, if it is to make such a finding, to indicate that such finding is not to be relied upon for immigration consequences, but only for purposes of guideline calculation or restitution.

(*Id.* at 6.)

And at sentencing, which occurred two months after Mr. Reddy submitted his sentencing memorandum, Mr. Reddy's counsel again focused his argument on the $10,000.00 loss amount. (*See* Sentencing Tr. at 51:23-53:12 (discussing the "tremendous collateral consequences" of finding that the loss amount is greater than $10,000.00); *see also id.* at 50:21-57:14 (Mr. Reddy and his counsel addressing the court and not arguing that it is improper to consider transactions outside the instances specified in the plea agreement).) In addition, the court made statements to Mr. Reddy at sentencing informing him that immigration consequences flowed from his guilty plea and, in particular, the loss amount. (*See* Sentencing Tr. at 60:24-61:3 ("[I]t's hard to reconcile that three-level acceptance of responsibility with the argument that the loss is under $10,000, but I also understand the immigration consequences of that argument, and I'm not going to penalize Mr. Reddy for making it.").) It is therefore clear that counsel advised Mr. Reddy regarding the risk of deportation associated with his plea and that Mr. Reddy understood these risks.

Mr. Reddy nonetheless argues that counsel was deficient for giving false assurances regarding the risks of deportation. (Statement at 4.) According to Mr. Reddy:

> Rather than telling Mr. Reddy that by pleading guilty to a fraud offense for which the court could reasonably determine the loss he caused exceeds

> $10,000 – would render him deportable. [sic] Counsel told Mr. Reddy that deportation was possible but very unlikely because "you are only pleading guilty to the six small transactions listed in the plea agreement. These transactions are under $10,000 so it is very unlikely that you will be deported." Indeed counsel for Mr. Reddy strenuously argued before this court at sentencing that the loss cause[d] by his fraud was under $10,000. An argument this court flatly rejected.

(*Id.*) Based on this statement, and the foregoing record evidence, the court concludes that counsel did not make any "false assurances" such that his performance was deficient. *See Padilla*, 559 U.S. at 368-69. In fact, according to Mr. Reddy, his counsel informed him that "deportation was possible." (Statement at 4.) Moreover, as evidenced above, Mr. Reddy appreciated the implications of a loss amount above $10,000.00, that the court would ultimately determine the loss amount, and that, in reaching its determination, the court could consider instances outside of those listed in the plea agreement. Again, Mr. Reddy admitted as much in his sentencing memorandum: "It is acknowledged the plea agreement also provides as additional relevant conduct other instances where the defendant aided and abetted fraudulent food stamp activity." (Sentencing Memo. at 4.)

      This case is distinguishable from *Padilla*, in which the Supreme Court found that counsel's advice regarding the immigration consequences of a guilty plea rendered his performance defective. 559 U.S. at 369. In *Padilla*, counsel failed to advise the petitioner of the consequence of entering a plea for a drug-related charge, even explaining to the petitioner that he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 359 (internal quotation marks and citation omitted). The petitioner then "relied on his counsel's erroneous advice when he pleaded guilty to the drug charges that made his deportation virtually mandatory." *Id.* As the *Padilla*

Court explained, counsel's performance was deficient because he could have "easily determined" that the plea would make the petitioner eligible for deportation simply from reading the text of the statute, which "specifically commands removal for all controlled substances convictions . . . ." *Id.* at 368. In other words, counsel in *Padilla* erroneously advised his client that he would not be deported as a result of pleading to a crime for which "the deportation consequence [wa]s truly clear." *Id.* at 368-69.

Here, in contrast, the deportation consequences of Mr. Reddy's plea were "unclear or uncertain," hinging on the loss amount that the court would later determine. *See id.* at 369. In this scenario, counsel only needed to advise Mr. Reddy "that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Counsel clearly performed this role by advising Mr. Reddy of the potential immigration consequences of pleading guilty to SNAP Benefit Fraud, including if the court determined that the loss amount was greater than $10,000.00. In fact, counsel provided Mr. Reddy "correct advice" about the deportation consequences of a loss amount greater than $10,000.00, thus satisfying the higher standard for when the consequences are clear. *Id.* Moreover, considering counsel's arguments in the sentencing memorandum and at the sentencing hearing that expressly acknowledged that the court would consider transactions outside those listed in the plea agreement to calculate the loss amount—let alone the statements in the plea agreement that explained as much—the court finds it "palpably incredible or patently frivolous," *Shah*, 878 F.2d at 1158, that counsel told Mr. Reddy that the court

//

//

would only consider "the six small transactions listed in the plea agreement" (Statement at 4). Thus, counsel's performance was not deficient.[2]

Further, even if the court found that counsel was deficient, the court concludes that Mr. Reddy was not prejudiced by any deficiency because Mr. Reddy was repeatedly advised by the court, as well as the Government, about the potential immigration consequences of his guilty plea and the manner in which the court would calculate the loss amount. *See Weaver* 455 F.3d at 967. Accordingly, the court DENIES Mr. Reddy's ineffective assistance of counsel claim.

## C. Certificate of Appealability

As a final matter, the court notes that a petitioner seeking post-conviction relief may appeal a district court's dismissal of a 28 U.S.C. § 2255 motion only after obtaining a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented

---

[2] Mr. Reddy also argues, in one sentence, that counsel was ineffective because he failed to properly advise Mr. Reddy "that even with a loss under $10,000, he is still deportable for having plead [sic] guilty to a crime involving moral turpitude." (Statement at 4.) Mr. Reddy does not cite any law or evidence for this argument. (*See id.*) Regardless, Mr. Reddy is not entitled to relief on this conclusory claim. Mr. Reddy admits that counsel told him: "These transactions are under $10,000 so it is very unlikely that you will be deported." (*Id.*) Thus, counsel did advise Mr. Reddy of the potential immigration consequences even if the loss amount was under $10,000.00. Moreover, Mr. Reddy was similarly advised in the plea agreement and by the court at the plea hearing. *See generally Reddy*, No. CR16-0189JLR, Plea; (Plea Tr.) Thus, even if Mr. Reddy could show that counsel did not sufficiently advise him—he cannot—there was no prejudice from counsel's alleged deficient performance.

are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the court concludes that Mr. Reddy is not entitled to a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Reddy's habeas corpus petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Dkt. # 1.)

Dated this 13th day of June, 2019.

JAMES L. ROBART
United States District Judge